IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

WENDY LEE CONGER                                                                          PLAINTIFF

v.                     Civil No. 05-5008

JO ANNE B. BARNHART, Commissioner
Social Security Administration                                            DEFENDANT

**MEMORANDUM OPINION**

Plaintiff Wendy Lee Conger brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying her applications for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 416(i) and 423, and section 1602 of Title XVI, 42 U.S.C. § 1381a, respectively. In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See 42 U.S.C. § 405(g).*

**Procedural and Factual Background**

The plaintiff filed her application for DIB and an application for SSI on November 25, 2002 (Tr. 50-53, 145-46), alleging an onset date of February 26, 2002 (Tr. 49, 50, 58, 67.) The applications were initially denied (Tr. 26-27, 147-48) and those denials were upheld upon reconsideration (Tr. 28-29, 149-50). Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). (Tr. 38.)

On November 6, 2003, a hearing was held by the ALJ. The plaintiff was represented by counsel at this hearing. (Tr. 151-192.) The ALJ issued an unfavorable ruling on July 20, 2004,

deciding that the plaintiff was disabled, but that her chronic alcohol and drug dependance and abuse was a contributing factor material to the determination of disability. Thus, the ALJ found that plaintiff was not entitled to a period of disability and DIB and not eligible for SSI within the meaning of the Act. (Tr. 192.) The plaintiff then requested a review of the hearing by the Appeals Council (Tr. 6-8), which denied that request on December 8, 2004 (Tr. 3-5); thus, the ALJ's decision became the final action of the Commissioner. The plaintiff filed her complaint with this court on January 14, 2005, seeking judicial review of that decision. (Doc. 1.) The Commissioner filed an appeal brief in this matter (Doc. 7); the plaintiff has not filed an appeal brief. This case is before the undersigned pursuant to the consent of the parties. (Doc. 5.)

Plaintiff was 37 years of age at the time of the administrative hearing. She completed high school and one year of college courses. (Tr. 156.) Plaintiff's last job, which ended on February 26, 2002, was as a "carhop" for Sonic, a fast-food restaurant. Since that time, she has done a variety of small, odd jobs, such as cleaning someone's yard, but she has not had a full-time or steady employment since leaving Sonic. (Tr. 157.) In addition to her work at Sonic, plaintiff has worked as a cook for numerous restaurants for approximately 10 years. (Tr. 72.)

Plaintiff began seeking treatment from the Ozark Guidance Center (OGC) in 1998. (Tr. 116, 158.) She reported at that time that she suffered from "pronounced irritability" or "'rages' of acute anger." She also reported use of alcohol and cannabis, although at that time, she stated that her last use of cannabis was in 1997. (Tr. 112.) A psychiatric assessment was performed in September 1998, and plaintiff was diagnosed as suffering from "Major Depressive Disorder, single episode, moderate symptoms [and] Polysubstance Abuse, in remission." It was further noted that she had some problems with social support group and financial problems. Her Global

Assessment of Functioning scale (GAF) was 62. (Tr. 113-114.) Two years later, plaintiff was again seem by OGC, and she reported that she had resumed drinking alcohol and smoking marijuana. At that time, she was diagnosed as suffering from alcohol and cannabis dependence, and it was noted that plaintiff had problems with her primary support group, social environment, and interaction with the legal system. At that time, her GAF was 65. (Tr. 110-111.)

When plaintiff was seen by Margaret Lowry, at the OGC in July 2002. She was diagnosed as suffering from alcohol and polysubstance dependence as well as borderline personality disorder. Her GAF scale was 40. (Tr. 106-108.) Another psychiatric assessment was performed in December 2002 by Dr. H. Wain Lindley, Jr. Dr. Lindley reported that plaintiff's substance abuse began when she was in her teenage years. In December 2002, plaintiff was dependent upon the charity of family as well as food stamp support. Dr. Lindley found that "there was some evidence that recent substance usage has been higher than she admitted." Dr. Lindley opined that plaintiff "does describe problems with mood swings and heightened emotional reactivity, but due to her past and recent substance usage, it is difficult to clearly describe this diagnostically. Much of what she reports is consistent with Borderline Personality structure with secondary substance abuse. She does not appear to give history of true major depression or mania." He diagnosed plaintiff with cannabis dependence; alcohol, cocaine, and amphetamine abuse; and Borderline Personality Disorder. (Tr. 103-105.) On January 6, 2003, plaintiff reported to Dr. Lindley that her cannabis use was down to two times per week, when available and that she had "'hardly any [alcohol] since Christmas.'" (Tr. 101.)

On January 14, 2003, plaintiff again saw Margaret Lowry for assistance in obtaining information for her Social Security Disability application. At that time, Ms. Lowry opined that

plaintiff was unable to sustain substantial gainful employment. (Tr. 134-135.) When Ms. Lowry saw the plaintiff in April 2003, she noted that plaintiff was in a dual diagnosis treatment program and had discussed "the possibility of going to college and getting a degree in accounting, then going on for her CPA." In April 2003, Ms. Lowry opined that plaintiff could sustain substantial gainful employment "with support and prompting." (Tr. 130-131.)

At the request of the ALJ, plaintiff was evaluated by Dr. Martin T. Faitak, a clinical psychologist. Dr. Faitak evaluated plaintiff on April 7, 2004. (Tr. 138-141.) He noted that she did not request any breaks in the first two hours of testing and did not exhibit any pain symptoms. Her Full Scale IQ score was 106, placing her in the average range of intellectual achievement. Dr. Faitak opined:

> Testing data suggest that [plaintiff] is very unstable. She appears to feel depressed, hopeless, irritable, and guilty. Frustration tolerance is very low. Intellectual functioning is in the average range, with good visual organizational skills. Academic functioning is average to low average. Ms. Conger appears to make decisions impulsively, and to view herself as unworthy and inadequate. She apparently has a lack of respect for normal standards and values. Although outgoing, she is prone to conflicts with others. Ms. Conger may be insensitive to the feelings of others and may blame them for her difficulties.
>
> Of the skills and capacities normally required for working, Ms. Conger appears to have strength in her thinking speed, reasoning, intelligence, and communication skills. She has good energy level. She appears to have weakness in her reliability, judgment, commitment to social norms, respect for the needs of others, and the ability to deal with stresses. Her stress tolerance is low, and she apparently does not take responsibility for managing it well.
>
> It appears that Ms. Conger's emotional problems contributed to her past drug abuse, and that she would likely have emotional problems even without that drug use. The drug use may have interfered with stable employment in the past. It is recommended that she continue with her medication and counseling on a regular and predictable basis. She should also continue drug and alcohol treatment. If Ms. Conger can remain stable in her treatment efforts, it is possible that she would be employable in the future. If she were to obtain benefits, she would

AO72A
(Rev. 8/82)

likely have no difficulty managing them on her own.

(Tr. 141.)

Dr. Faitak completed a Medical Assessment of Ability to Do Work-Related Activities (Mental) for plaintiff. He determined that, as it concerned making occupational adjustments, she had a "fair"[1] ability to (1) follow work rules, (2) relate to co-workers, (3) deal with the public, (4) use judgment, (5) interact with supervisors, (6) deal with work stresses, and (7) function independently, and that she had a "good"[2] ability to maintain attention and concentration. As it relates to making performance adjustments, Dr. Faitak determined that plaintiff had a "fair" ability to understand, remember, and carry out complex job instructions, a "good" ability to understand, remember, and carry out detailed, but not complex, job instructions, and an "unlimited/very good"[3] ability to understand, remember, and carry out simple job instructions. Concerning plaintiff's abilities to make personal and social adjustments, Dr. Faitak found that she had "good" ability to maintain her personal appearance, and a "fair" ability to behave in an emotionally stable manner, relate predictably in social situations, and demonstrate reliability. Notably, Dr. Faitak did not rate plaintiff as "poor/none"[4] in any category. Dr. Faitak indicated that his assessment was based on plaintiff's borderline personality disorder. (Tr. 142-43.)

---

[1] A "fair" ability was defined as "[a]bility to function in this area is seriously limited, but not precluded." (Tr. 142.)

[2] A "good" ability was defined as "[a]bility to function in this area is limited but satisfactory." (Tr. 142.)

[3] An "unlimited/very good" ability was defined as "[a]bility to function in this area is more than satisfactory." (Tr. 142.)

[4] A "poor/none" ability was defined as "[n]o useful ability to function in this area." (Tr. 142.)

-5-

Dr. Donald Clay, an OGC staff psychiatrist and the plaintiff's treating physician, also completed a Residual Functional Capacity of the Mentally Impaired. (Tr. 122-127.) He determined that plaintiff was "marked[ly]"[5] limited in her abilities to (1) comprehend and carry out simple instructions, (2) remember work procedures, (3) perform ordinary routine tasks without inordinate supervision, (4) respond appropriately to co-workers, (5) deal with the general public, (6) exercise appropriate judgment, (7) maintain continuous performance to complete task, (8) properly complete sequential tasks, (9) work accordingly to a plan or schedule, (10) abide by occupational rules/regulation. He found that she was "extreme[ly]"[6] limited in her abilities to (1) remember detailed instructions, (2) respond appropriately to supervision, (3) function independently on the job, (4) complete a normal workday, (5) concentrate and attend to a task over an eight-hour period, (6) perform routine tasks on a regular and reliable basis without frequent absences, (7) perform routine tasks on a sustained basis over an eight-hour day for a number of weeks without frequent absences, (8) work a normal eight-hour workday without psychologically based interruptions or distractions, (9) make simple work-related decisions, (10) maintain social functioning, (11) be aware of normal hazards and make necessary adjustments to avoid those hazards, and (12) tolerate customary work pressures in a work setting where there are certain production requirements and demands. Dr. Clay noted that plaintiff had not been able to function outside a highly supportive living situation for the previous two years. (Tr. 122-126.) On the same day that Dr. Clay completed the RFC for plaintiff--January 23, 2004--he also saw

---

[5] A "marked" rating is defined as "[a]n impairment which seriously affects the claimants ability to function independently, appropriately and effectively." (Tr. 127.)

[6] An "extreme" rating is defined as "[a]n impairment that caused the drastic limitation in the claimant's ability to function independently, appropriately and effectively." (Tr. 127.)

-6-

the plaintiff to see about how her medication management was progressing. At that time, Dr. Clay noted that plaintiff's substance abuse was in remission. (Tr. 137.)

Plaintiff also contends that she is disabled in part due to back injuries. In April 2000, she was seen by doctors at the Washington Regional Medical Center (WRMC) for complaints of low back pain after she moved furniture. A CT scan was performed. It showed a "minimal annular bulge at the 3/4 and 4/5 levels, probably still within normal limits," but no evidence of hernination or canal stenosis at those levels. The scan did reveal a "right posterolateral/far lateral herniated nucleus pulposus at L-5/S-1." (Tr. 96-100.) In March 2002, plaintiff returned to the WRMC two days after an automobile accident for complaints of back pain. An exam performed at that time revealed a normal spine alignment and no evidence of a fracture or malalignment. (Tr. 93-94.) In July 2002, plaintiff reported to the OGC that she had been ordered not to work for six weeks. (Tr. 107.) At the ALJ hearing, plaintiff agreed that her back pain was not the main disability she was claiming and that she treated the back pain with over-the-counter medications such as Advil and Tylenol. (Tr. 182.)

**Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists

AO72A
(Rev. 8/82)

in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work

experience in light of her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**Discussion**

"Since certain 1996 amendments to the Social Security Act, if alcohol or drug abuse comprises a contributing factor material to the determination of disability, the claimant's application must be denied." *See Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (*citing* 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535). "If the ALJ is unable to determine whether substance use disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden [of proving the disability] is met and an award of benefits must follow." *See id.*

"If the gross total of a claimant's limitations, including the effects of substance use disorders, suffices to show disability, then the ALJ must next consider which limitations would remain when the effects of the substance use disorders are absent. *See id.* at 694-95. After the ALJ has determined (1) that the claimant is disabled, (2) that substance use is a concern, and (3) that substantial evidence in the record shows what limitations would remain in the absence of substance addiction, may the ALJ reach a conclusion of whether the substance use disorders are a contributing factor material to the determination of disability. *See id.* at 695.

In this matter, the ALJ found that the plaintiff met the requirements for a period of disability and DIB, however, the ALJ further held that the "evidence of record as a whole establishes that the claimant would not be 'disabled' within the meaning of the Social Security Act if not for her chronic alcohol and drug dependence/abuse." (Tr. 23-24.) Regarding her mental limitations, the ALJ found that plaintiff's "personality disorder results in mild restrictions

of activities of daily living, moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace, but not to the extent that it compromises her ability to perform unskilled work related activities." (Tr. 21.)

Critical to the ALJ's analysis is the improper characterizing of the RFC assessment by Dr. Clay, the plaintiff's treating psychiatrist, and the comparison of that assessment with the RFC assessment made by Dr. Faitak. The ALJ discredits what is described as a "very restrictive assessment" because the ALJ finds that Dr. Clay "does not distinguish if his restrictions are made in conjunction with the impact of alcohol and/or drug use along with her mental limitations." Thus, the ALJ finds that Dr. Clay's assessment "was made in conjunction with both drug and/or alcohol related limitations along with mental limitations of a borderline personality disorder." (Tr. 20-21.) What the ALJ fails to recognize, however, is that on the same day that Dr. Clay signed the RFC, he also noted in his treatment records that plaintiff's substance abuse condition was in remission. (Tr. 137.) Therefore, it is reasonable to assume that the RFC determination was made solely on the plaintiff's mental limitations as expressed through her diagnosed Borderline Personality Disorder.

The ALJ's determination, based in substantial part on contrasting Dr. Clay's RFC assessment with the RFC assessment from Dr. Faitak, does not provide the substantial evidence the ALJ asserts is present to support the conclusion that plaintiff would not be disabled absent drug and alcohol addiction. The ALJ incorrectly characterizes Dr. Clay's RFC assessment to be based on a combination of plaintiff's mental limitations and substance uses. Since the ALJ's determination is belied by Dr. Clay's RFC assessment, it is proper to remand this matter for further consideration.

-10-

**Conclusion:**

Accordingly, the ALJ's decision denying DIB to the plaintiff is not supported by substantial evidence and should be reversed. This matter should be remanded to the Commissioner for further consideration of the opinions of plaintiff's treating psychiatrist.

DATED this 14th day of March 2006.

                                          **/s/ Beverly Stites Jones**
                                        _____
                                        HON. BEVERLY STITES JONES
                                        UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)